UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

Security National Insurance Company,

      Plaintiff,

v.

Jess Amchin, Parag Amin, Michael
Brenner, Craig Ginsberg, Marshall Granor,
Lawrence Isaacman, Gayla McClusky,
Anil Patel a/k/a Arilrvmar Patel, Mehul
Patel, David Bezar, Walter Tillman,
Donna Baer, Russell Carlow, Kevin Gehring,
Matthew Godshall, John Hain, Sr., Jennifer
Lee a/k/a Jennifer Weil, David Margulies,
Harry McElhone, Donna McKeever,
Thomas Mennie, Daniel O'Brien, and Suzanne
Weisberg a/k/a Suzanne Shane,

      Defendants.

No.

---

## COMPLAINT FOR
## DECLARATORY JUDGMENT

    Plaintiff, Security National Insurance Company ("Security National"), by and through its undersigned attorneys, brings this Complaint for Declaratory Judgment against the above-named Defendants regarding Security National's obligations under a Directors & Officers Liability Insurance Policy issued by Security National to Vantage Point Bank. In support of its cause of action, Security National states as follows:

### I.    PARTIES

    1.    Plaintiff Security National is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Dallas, TX. Security National is located at 12790 Merit Dr., Dallas, Texas 75251.

2.      Defendants are former directors and officers of Vantage Point Bank, a financial institution chartered under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Horsham, PA.  In this Complaint, Defendants are collectively referred to as "Defendants" or "the Directors and Officers."

3.      Defendant Jess Amchin is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Amchin is a resident and citizen of the Commonwealth of Pennsylvania.

4.      Defendant Parag Amin is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Amin is a resident and citizen of the Commonwealth of Pennsylvania.

5.      Defendant Michael Brenner is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Brenner is a resident and citizen of the Commonwealth of Pennsylvania.

6.      Defendant Craig Ginsberg is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Ginsberg is a resident and citizen of the Commonwealth of Pennsylvania.

7.      Defendant Marshal Granor is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Granor is a resident and citizen of the Commonwealth of Pennsylvania.

8.      Defendant Lawrence Isaacman is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Isaacman is a resident and citizen of the Commonwealth of Pennsylvania.

2

9.    Defendant Gayla McClusky is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, McClusky is a resident and citizen of the Commonwealth of Pennsylvania.

10.    Defendant Anil Patel is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Anil Patel is a resident and citizen of the state of New Jersey.  Anil Patel is also known as Arilrvmar Patel.

11.    Defendant Mehul Patel is a former member of the Board of Directors for Vantage Point Bank.  Upon information and belief, Mehul Patel is a resident and citizen of the state of Illinois.

12.    Defendant David Bezar is a former member of the Board of Directors and a former officer of Vantage Point Bank.  Upon information and belief, Bezar is a resident and citizen of the Commonwealth of Pennsylvania.

13.    Defendant Walter Tillman is a former member of the Board of Directors and a former officer of Vantage Point Bank.  Upon information and belief, Tillman is a resident and citizen of the Commonwealth of Pennsylvania.

14.    Defendant Donna Baer is a former officer of Vantage Point Bank.  Upon information and belief, Baer is a resident and citizen of the state of California.

15.    Defendant Russell Carlow is a former officer of Vantage Point Bank.  Upon information and belief, Carlow is a resident and citizen of the Commonwealth of Pennsylvania.

16.    Defendant Kevin Gehring is a former officer of Vantage Point Bank.  Upon information and belief, Gehring is a resident and citizen of the Commonwealth of Pennsylvania.

17.    Defendant Matthew Godshall is a former officer of Vantage Point Bank.  Upon information and belief, Godshall is a resident and citizen of the Commonwealth of Pennsylvania.

3

18.     Defendant John Hain, Sr. is a former officer of Vantage Point Bank.   Upon information and belief, Hain is a resident and citizen of the state of New Jersey.

19.     Defendant Jennifer Lee is a former officer of Vantage Point Bank.   Upon information and belief, Lee is a resident and citizen of the Commonwealth of Pennsylvania. Jennifer Lee is also known as Jennifer Weil.

20.     Defendant David Margulies is a former officer of Vantage Point Bank.   Upon information and belief, Margulies is a resident and citizen of the state of New Jersey.

21.     Defendant Harry McElhone is a former officer of Vantage Point Bank.   Upon information and belief, McElhone is a resident and citizen of the state of New Jersey.

22.     Defendant Donna McKeever is a former officer of Vantage Point Bank.   Upon information and belief, McKeever is a resident and citizen of the Commonwealth of Pennsylvania.

23.     Defendant Thomas Mennie is a former officer of Vantage Point Bank.   Upon information and belief, Mennie is a resident and citizen of the Commonwealth of Pennsylvania.

24.     Defendant Daniel O'Brien is a former officer of Vantage Point Bank.   Upon information and belief, O'Brien is a resident and citizen of the state of New Jersey.

25.     Defendant Suzanne Weisberg is a former officer of Vantage Point Bank.   Upon information and belief, Weisberg is a resident and citizen of the Commonwealth of Pennsylvania.   Suzanne Weisberg is also known as Suzanne Shane.

4

## II.    JURISDICTION AND VENUE

26.    This Court has the power to determine the parties' respective rights and other legal obligations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  The dispute between Security National and the Directors and Officers, discussed below, creates an actual controversy for this Court to adjudicate.

27.    This Court has personal jurisdiction over each of the Defendants, because the present action arises out of or relates to acts conducted by Defendants within this state.  In his or her role as an officer or director, each Defendant also engaged in significant activity within the Commonwealth of Pennsylvania for a Pennsylvania-chartered bank.

28.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the matter is between citizens of different states.

29.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## III.    FACTUAL ALLEGATIONS

### A.    Vantage Point Bank and Its Directors and Officers

30.    Vantage Point Bank ("the Bank") is a financial institution chartered under the laws of the Commonwealth of Pennsylvania.

31.    Upon information and belief, the Bank's primary retail branch in 2013 and 2014 was located in Horsham, PA.  The Bank's corporate headquarters was also in Horsham, PA.

5

32.     Upon information and belief, Defendants Amchin, Amin, Brenner, Ginsberg, Granor, Isaacman, McClusky, Anil Patel, Mehul Patel, Bezar, and Tillman are former members of the Bank's Board of Directors (collectively, "the Directors").

33.     Upon information and belief, Defendants Baer, Carlow, Gehring, Godshall, Hain, Lee, Margulies, McElhone, McKeever, Mennie, O'Brien, Weisberg, Bezar, and Tillman are former officers or employees of the Bank (collectively, "the Officers").

**B.      The Bank's D&O Insurance**

34.     Beginning in 2012, the Bank maintained Directors & Officers Liability Insurance with Security National.

35.     In or around December 2012, Security National issued Policy No. SDO1066315 01 ("the D&O Policy") to the Bank, with a policy period of December 7, 2012 to December 7, 2013.  A true and correct copy of the D&O Policy is attached as Exhibit A.

36.     In or around September 2013, Security National informed the Bank that it would not renew the D&O Policy when it expired on December 7, 2013.

37.     On or about December 3, 2013, the Bank decided to purchase the Extended Reporting Period offered under Section VI of the D&O Policy.

38.     Security National then issued Policy No. SDO1108146 00 ("the ERP Policy").

39.     The ERP Policy has a policy period of December 7, 2013 to December 8, 2013.  It also establishes an Extended Reporting Period, beginning on December 8, 2013 and ending on December 8, 2014.  A true and correct copy of the ERP Policy is attached as Exhibit B.

6

**C.    The Bank's Failure and Take-Over by the FDIC**

40.    On February 28, 2014, the Pennsylvania Department of Banking and Securities closed the Bank due to alleged unsafe and unsound practices, and a failure to meet minimum capital requirements.

41.    The Pennsylvania Department of Banking and Securities also appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for the Bank.

42.    Prior to the Bank's closure on February 28, 2014, no claims, as defined by the D&O and ERP Policies, had been asserted against the Directors and Officers for mismanagement, negligence, or breach of fiduciary duty.

43.    Prior to the Bank's closure on February 28, 2014, neither the Bank nor any of its Directors or Officers provided written notice to Security National of facts or circumstances that may give rise to a "claim."

**D.    The FDIC's November 24, 2014 Demand Letter**

44.    On November 24, 2014 (approximately nine months after the Bank's closure), the FDIC issued a demand letter to the above-named Directors and Officers.  A true and correct copy of that letter (hereinafter, "Demand Letter") is attached as Exhibit C.

45.    The FDIC's Demand Letter states that the FDIC "has succeeded to all claims held by the Bank," and that "the FDIC asserts claims against the Bank's officers and directors . . . for negligence, gross negligence and breaches of fiduciary duties."

46.    The Demand Letter claims that the Directors' and Officers' failure to correct regulatory criticisms and otherwise operate the Bank in a safe and sound manner "constitutes negligence, gross negligence and breach of fiduciary duties owed to the Bank."

DEASEY, MAHONEY & VALENTINI, LTD.
SUITE 3400   ·   1601 MARKET STREET   ·   PHILADELPHIA, PA 19103-2301

47.     Among other things, the Demand Letter alleges that the Bank's Directors and Officers failed to adequately manage or control risk within the Mortgage Banking Operation.

48.     The Demand Letter alleges that the Directors and Officers failed to conduct proper due diligence prior to the Bank's purchase of a pool of underperforming home equity loans.

49.     The Demand Letter alleges that the Directors and Officers approved excessive compensation and expense reimbursements to mortgage banking officers, which resulted in abnormally high expenses and net losses.

50.     The Demand Letter alleges that the Directors' and Officers' lack of oversight permitted mortgage banking officers to engage in related-party transactions to the detriment of the Bank.

51.     The Demand Letter alleges that the Directors and Officers failed to comply with the requirements of previous examination reports.

52.     The Demand Letter also alleges that the Directors and Officers significantly understated the amount of the Bank's loss for the year 2012.

53.     As a result of the Directors' and Officers' negligence, gross negligence, and breaches of fiduciary duties owed to the Bank, the F DIC claims that "the Bank has been damaged," and that "the Bank's losses total approximately $9 million."

54.     The FDIC therefore demands that the Directors and Office make payment in the amount of $9 million to the FDIC as Receiver of Vantage Point Bank.

8

**E.    Demands for Coverage by 15 of the 23 Directors and Officers**

55.    The FDIC Demand Letter suggested that the Security National policies may cover all or some of the FDIC's claims, and advised the Directors and Officers to make appropriate and timely notice to Security National so that they did not lose coverage.

56.    The FDIC Demand Letter also stated that policies issued by other insurers may provide coverage for the Directors' and Officers' liability.

57.    On or around November 25, 2014 to December 4, 2014, a number of the Directors and Officers sent notice to Security National of the Demand Letter and asked for reimbursement of defense expenses and/or indemnification for any losses.

58.    Specifically, Defendants Amchin, Amin, Brenner, Ginsberg, Granor, Isaacman, McClusky, Anil Patel, Mehul Patel, Bezar, Baer, Gehring, Margulies, Mennie, and Wesiberg provided notice to Security National of the claims made against them.

59.    As of February 10, 2015, the eight remaining Directors and Officers – Defendants Tillman, Carlow, Godshall, Hain, Lee, McElhone, McKeever, and O'Brien (hereinafter, the "Non-Reporting Defendants") -- had not provided notice of the FDIC's claims to Security National.

60.    Nor had the Non-Reporting Defendants sought coverage from Security National for defense expenses or indemnification.

**F.    Security National Concludes There Is No Coverage under Its Policies**

61.    Security National has denied coverage to all of the Directors and Officers for the claims made by the FDIC.

DEASEY, MAHONEY & VALENTINI, LTD.
SUITE 3400  ·  1601 MARKET STREET  ·  PHILADELPHIA, PA 19103-2301

62.     Security National's denial is based upon the D&O and ERP Policies' "automatic termination provision," which states that coverage shall cease as of the date the Bank ceases to engage in an active banking business or a receiver is appointed by a state banking regulator.

63.     Security National's denial is also based upon the Policies' "insured vs. insured exclusion," which provides that Security National is not liable for any loss in connection with a claim "by, on behalf, or at the behest of" the Bank, or any "successor or trustee" of the Bank.

64.     With respect to the Non-Reporting Defendants, Security National has reserved the right to deny coverage based on their failure to provide notice of the FDIC's claim to Security National within the time required under the Policies.

65.     In addition, Security National has reserved the right to assert the following defenses with respect to all Directors and Officers:

(a)     To the extent some or all of the wrongful acts alleged by the FDIC may have occurred after December 8, 2014, any loss resulting from such acts is not covered, pursuant to Section VI.B;

(b)     To the extent that some or all of the damages alleged by the FDIC are the result of unpaid or unrecoverable loans, leases, or extensions of credit, such damages do not constitute a covered "loss" under Section III.T.3;

(c)     Any loss in connection with claims by the FDIC based upon, relating to, or in any way involving the receipt of improper payments or financial advantages, or the compensation of officers without appropriate approval, is excluded under Sections IV.A.3 and IV.A.4;

10

(d)     Any loss in connection with claims by the FDIC based upon, relating to, or in any way involving the willful failure to comply with a governmental or administrative order is excluded under Section IV.A.8;

(e)     Misrepresentations, omissions, or misstatements in the Bank's application for insurance or attached financial reports may entitle Security National to rescind the Policies, under Section XI.C;

(f)     In the event other insurance provides coverage for the FDIC's claim, the Security National Policies must be treated as excess, pursuant to Section XI.I; and

(g)     Any claims for actions taken by the Directors or Officers in a capacity other than as a director, officer, or employee of the Bank is not covered under Section III.U and Section I.A.

66.     Security National also generally reserved all other rights, interests, and defenses, whether under the D&O or ERP Policies, at law, or otherwise.

67.     A true and correct copy of Security National's denial letter to one of the Non-Reporting Defendants is attached as Exhibit D.

68.     A true and correct copy of Security National's denial letter to one of the other Defendants is attached as Exhibit E.

**G.     The Terms of the D&O and ERP Policies**

69.     The D&O Policy was issued for the policy period of December 7, 2012 to December 7, 2013.

70.     The ERP Policy was issued for the policy period of December 7, 2013 to December 8, 2013.

11

71.     The ERP Policy also included an Extended Reporting Period Endorsement, which provides, in part: "An Extended Reporting Period beginning at 12:01 am on 12/8/2013 and ending at 12:01 am on 12/8/2014 is added to the policy . . . .  All other terms of the policy remain the same.  Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the policy other than as above stated."

72.     The terms of the D&O Policy and ERP Policy (hereinafter, the "Policies") are otherwise identical in all relevant respects.

73.     The Declarations page for both Policies states that:

**THIS IS A CLAIMS MADE POLICY.  COVERAGE IS LIMITED TO LOSS, INCLUDING DEFENSE EXPENSES RESULTING FROM CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD.**

74.     Insuring Agreement A of the Policies provides coverage for "Executive Liability," with an aggregate limit of liability of $5 million, as follows:

The Insurer will pay on behalf of an **insured person**, **loss** that is the result of a **claim** for a **management practices wrongful act** first made during the **policy period** or during the Extended Reporting Period, if exercised, except to the extent that the **company** has indemnified the **insured person** for such a **loss**.

75.     The Policies' "Coverage Clause," located in Section II of the Policies, states that:

This policy shall cover, subject to all other provisions of the policy, **loss** resulting from **claims** for **wrongful acts** (committed after the **retroactive date**) on the condition that written notice of the **claim** is given to the Insurer at the address shown in Item 7. of the Declarations.  Such notice must be received by the Insurer within the **policy period** or the Extended Reporting Period, if exercised.  Any **claim** made subsequent to the **policy period** as to which written notice was received by the Insurer within the **policy period** as provided in **SECTION X. B.** shall be treated as a **claim** made during the **policy period.**

76.     Words or phrases appearing in bold are defined terms under the Policies.

12

77.    Under Section III.P of the Policies, the term "insured person" is defined as follows:

> **Insured person** means any person, who was, now is, or shall be a director, officer, trustee, appointed member of an advisory board or committee, volunteer, organizer or **employee** of the **company.**

78.    Under Section III.B. of the Polices, the term "claim" is defined to mean:

> 1.    a written demand for monetary damages or non-monetary relief, including notice of an arbitration, mediation or other dispute resolution in which money damages are sought;
> 2.    a civil proceeding commenced by the service of a complaint or similar pleading;
> 3.    an administrative or regulatory proceeding commenced by the filing of a notice of charges or similar pleading; or
> 4.    a criminal proceeding commenced by a return of an indictment.

> A **claim** shall be deemed to have been made on the date the **company** or an **insured person** receives the written demand, or on the date that the judicial or administrative proceeding is filed in court or with an administrative agency. . . .

79.    Section III.U. of the Policies defines "management practices wrongful act" as follows:

> **Management practices wrongful act** means any actual or alleged, misstatement, misleading statement, error or omission, or neglect or breach of duty by an **insured person** acting solely in their capacity as:
> 1.    director, officer, trustee, member of an advisory board or committee, volunteer, organizer or **employee** of the **company** . . . .

80.    The term policy period is defined by Section III.X of the Policies:

> **Policy period** means the period from the effective date of this policy to either the policy expiration date, as shown in Item 2. of the Declarations or the date on which the policy is effectively terminated, whichever is sooner, but shall not include the Extended Reporting Period.

81.    Under Section III.T, the term "loss" is defined as follows:

> **Loss** means any amount which any **insured person** or the **company** is legally obligated to pay as a result of a **claim**, and includes punitive,

**DEASEY, MAHONEY & VALENTINI, LTD.**
SUITE 3400  ·  1601 MARKET STREET  ·  PHILADELPHIA, PA 19103-2301

exemplary or multiple damages in excess of actual damages (except where uninsurable under applicable law), other damages, judgments, settlements and reasonable **defense expenses**. **Loss** shall not include:

...

3.    any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt;

...

7.    any restitution, disgorgement, or payment of similar payments including but not limited to the return of fees, commissions of charges for the **company's** services; or

8.    any matters which are uninsurable under the law pursuant to which this policy shall be construed. . . .

82.    Under Section III.G, "**Defense expenses** means reasonable costs, attorneys' fees, charges and expenses incurred by **insured persons** or the **company** in the investigation, defense or appeal of a covered **claim** . . . ."

83.    The Policies provide that, as a condition precedent to coverage, the insured persons must provide timely notice to Security National as follows:

**SECTION X.   NOTICE OF CLAIM**

A.    The **insured persons** and the **company** shall, as a condition precedent to their rights under this policy, give the Insurer written notice of any **claim** first made during the **policy period** or the Extended Reporting Period, if exercised, as soon as practicable, but in no event later than sixty (60) days after the **claim** is first made.

B.    If, during the **policy period**, any **insured person** or the **company** first becomes aware of any fact or circumstance that may give rise to a **claim**, and gives written notice to the Insurer of the reasons for anticipating the **claim**, subsequently made based upon such fact or circumstance shall be deemed to have been first made during the **policy year** in which notice was first given to the Insurer.

C.    Notice shall be effective on the date of receipt by the Insurer at the address shown in Item 7. of the Declarations. . . .

84.    The Policies also provide the following terms and conditions for the Extended Reporting Period added to the ERP Policy:

14

The Extended Reporting Period is not an extension of coverage, but rather a period to report **claims** first made during the Extended Reporting Period resulting from **wrongful acts** that occurred prior to the effective date of cancellation or nonrenewal and otherwise covered under this policy.   Notice of facts and circumstances that may give rise to a **claim** pursuant to **Section X.B** must be given during the **policy period** and shall not be effective if given during the Extended Reporting period.

85.     Both Policies include an "automatic termination provision," which provides as

follows in the case of the appointment of a receiver by a federal or state banking regulator:

If after the effective date of this policy, the **company** shall cease to engage in an active banking business or cease to accept deposits for any reason, coverage shall cease as of the date of the cessation of such business, and, absent a specific written agreement to the contrary, the **company** shall not have the right to purchase the Extended Reporting Period.   For the purposes of this clause, the cessation of the business of banking shall include, but not be limited to, the appointment by any federal or state banking regulators of a receiver, liquidator or person in a similar capacity and any transaction occurring at the request of any federal or state regulator.   The **company** shall provide written notice of such cessation of business to the Insurer as soon as practicable together with such information as the Insurer may request.

86.     Both Policies also include an "insured vs. insured" exclusion, which states that:

The Insurer shall not be liable to make any payment for **loss** in connection with any **claim** based upon, arising out of, relating to, in consequence of, or in any involving:

. . .

20.     any **claim** by, on behalf of, or at the behest of the **company**, any successor or trustee of the **company**, affiliate of the **company** or any **insured person** in any capacity, except where such **claim** is brought and maintained:

a.     in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **claim** which is not otherwise excluded by the terms of the **policy**;

b.     by an **insured person** solely as a customer of the **company**;

c.     by a security holder of the **company** as a derivative action on behalf of the **company** or such affiliate;

provided such **claim** is brought independently of, and totally without solicitation, assistance, participation, or intervention of any **insured** or any affiliate of the **company.**

15

87.     Section IV.A of each policy also includes a number of other exclusions, including the following:

> The Insurer shall not be liable to make any payment for **loss** in connection with any **claim** based upon, arising out of, relating to, in consequence of, or in any involving:
> …
>
> 3.     any **insured person** or the **company** gaining, in fact, any profit, remuneration, or financial advantage to which they were not legally entitled;
>
> 4.     any remuneration paid to any **insured person** without the previous approval of the governing bodies of the **company**;
>
> …
>
> 8.     the willful failure to comply with any law or any governmental or administrative order or regulation by the **company** or an **insured person** or with the consent of the **company** or an **insured person**. For the purposes of this exclusion, "willful" means acting with reckless disregard of such laws, orders, or regulations. However, the **insured person** or the **company** shall be indemnified for **defense expenses** as to any **claim** alleging such willful failure unless a judgment or final adjudication establishes such willful failure or if such willful failure is otherwise established in fact. In the event that the Insurer has no liability, the **insured person** and the **company** agree to repay to the Insurer, upon demand, all monies advanced by the Insurer in connection with such **claim** . . .

88.     Section XI.C. allows Security National to rescind the Policies under the following circumstances:

> It is agreed by the **company** and **insured persons** that the particulars and statements contained in the application and the attachments and materials submitted with the application (which shall be retained on file by the Insurer and shall be deemed attached hereto, as if physically attached hereto) are true and are the basis of this policy and are to be considered as incorporated in and constituting a part of this policy. It is further agreed by the **company** and the **insured persons** that such particulars and statements are material to the decision to issue this policy and that the policy is issued in reliance upon the truth of such particulars and statements. Any intentional misrepresentation, omission, concealment or incorrect statement of a material fact, in the application or otherwise, shall be grounds for the rescission of this policy.
>
> All particulars and statements made in the application and the attachments and materials submitted therewith shall be deemed to be made by each and every one

16

of the **insured persons** provided, however, that except for any misstatements or omissions of which the signers of the application are aware, any misstatement or omission in such application or the attachments and materials submitted with it concerning a specified **wrongful act** by a particular **insured person** or his cognizance of any matter which he has reason to suppose might afford grounds for a future **claim** against him shall not be imputed, for purposes of any rescission of this policy, to any other **insured persons** who are not aware of the omission or the falsity of the statement.

## COUNT I – DECLARATORY JUDGMENT

89.     Security National hereby incorporates by reference the allegations contained in paragraphs 1-88 of this Complaint, as if set forth fully herein.

### A.     *The FDIC Claim Was Not First Made Within the D&O or ERP Policy Period*

90.     The FDIC Demand Letter constitutes a "claim" within the meaning of the Policies.

91.     There are no other "claims" or allegations of wrongful acts asserted against the Directors and Officer which share common facts, circumstances, situations, events, or transactions with the FDIC Demand Letter.

92.     The FDIC's Demand Letter (hereinafter, "the FDIC Claim") was received by the Directors and Officers on or after November 24, 2014.

93.     The FDIC Claim was not first made within the policy period of the D&O Policy or the ERP Policy.

94.     No Director or Officer provided notice to Security National during the policy period of the D&O or ERP Policies of facts or circumstances that may give rise to the FDIC Claim.

95.     The Directors and Officers are not entitled to coverage under the Policies for any loss related to the FDIC Claim.

DEASEY, MAHONEY & VALENTINI, LTD.
SUITE 3400 · 1601 MARKET STREET · PHILADELPHIA, PA 19103-2301

**B.      The FDIC Claim Was Made After Coverage Automatically Terminated**

96.      On February 28, 2014, the Bank ceased to engage in an active banking business.

97.      On February 28, 2014, a Pennsylvania banking regulator also appointed the FDIC as receiver of the Bank.

98.      Therefore, under Section XI.G. of the D&O and ERP Policies, coverage ceased as of February 28, 2014.

99.      The FDIC Claim was first asserted after coverage had ceased under the Policies.

100.     All notices of claim from the Directors or Officers and requests for indemnification or reimbursement of defense expenses related to the FDIC Claim were also submitted after coverage had ceased.

101.     Security National therefore has no obligation to make payment under the Policies for any loss related to the FDIC Claim.

**C.      The Insured vs. Insured Exclusion Bars Coverage for the FDIC Claim**

102.     The FDIC Claim alleges that the Directors and Officers breached fiduciary duties owed to the Bank.

103.     The FDIC Claim seeks to recover damages and losses suffered by the Bank.

104.     The FDIC Claim is asserted against the Directors and Officers on behalf of the Bank.

105.     The FDIC Claim is also asserted by the FDIC as a successor to the Bank.

106.     Under Section IV.A.20 of the D&O and ERP Policies, the FDIC Claim is therefore excluded from coverage.

107.     Security National is not liable under the Policies to make any payment for loss in connection with the FDIC Claim.

**DEASEY, MAHONEY & VALENTINI, LTD.**
SUITE 3400  ·  1601 MARKET STREET  ·  PHILADELPHIA, PA 19103-2301

### D.     The Non-Reporting Defendants Are Not Entitled to Coverage

108.    Upon information and belief, Defendant Tillman received the FDIC Demand Letter on or before December 1, 2014.

109.    Defendant Tillman did not provide Security National written notice of the FDIC Claim as soon as practicable.

110.    Defendant Tillman did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

111.    Upon information and belief, Defendant Carlow received the FDIC Demand Letter on or before December 1, 2014.

112.    Defendant Carlow did not provide Security National written notice of the FDIC Claim as soon as practicable.

113.    Defendant Carlow did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

114.    Upon information and belief, Defendant Godshall received the FDIC Demand Letter on or before December 1, 2014.

115.    Defendant Godshall did not provide Security National written notice of the FDIC Claim as soon as practicable.

116.    Defendant Godshall did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

117.    Upon information and belief, Defendant Hain received the FDIC Demand Letter on or before December 1, 2014.

118.    Defendant Hain did not provide Security National written notice of the FDIC Claim as soon as practicable.

DEASEY, MAHONEY & VALENTINI, LTD.
SUITE 3400  ·  1601 MARKET STREET  ·  PHILADELPHIA, PA 19103-2301

119.    Defendant Hain did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

120.    Upon information and belief, Defendant Lee received the FDIC Demand Letter on or before December 1, 2014.

121.    Defendant Lee did not provide Security National written notice of the FDIC Claim as soon as practicable.

122.    Defendant Lee did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

123.    Upon information and belief, Defendant McElhone received the FDIC Demand Letter on or before December 1, 2014.

124.    Defendant McElhone did not provide Security National written notice of the FDIC Claim as soon as practicable.

125.    Defendant McElhone did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

126.    Upon information and belief, Defendant McKeever received the FDIC Demand Letter on or before December 1, 2014.

127.    Defendant McKeever did not provide Security National written notice of the FDIC Claim as soon as practicable.

128.    Defendant McKeever did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

129.    Upon information and belief, Defendant O'Brien received the FDIC Demand Letter on or before December 1, 2014.

20

130.    Defendant O'Brien did not provide Security National written notice of the FDIC Claim as soon as practicable.

131.    Defendant O'Brien did not provide Security National written notice of the FDIC Claim within 60 days after the FDIC Claim was received.

132.    Under Section X.A. of the D&O and ERP Policies, each of the Non-Reporting Defendants have failed to satisfy a condition precedent to coverage.

133.    Security National therefore is not obligated to provide coverage under either policy to any of the Non-Reporting Defendants (Defendants Tillman, Carlow, Godshall, Hain, Lee, McElhone, McKeever, and O'Brien) for any loss related to the FDIC Claim.

### E.    *Additional Provisions May Preclude Coverage*

134.    As described in paragraph 65, supra, additional provisions of the Policy may also preclude or limit coverage for the FDIC Claim.

135.    Security National may be entitled to deny or limit coverage for the FDIC Claim under Section VI.B, Section III.T.3, Section IV.A.3, Section IV.A.4, Section IV.A.8, Section XI.C, Section XI.I, Section I.A, or Section III.U of the D&O and ERP Polices.

136.    Additional coverage provisions, definitions, conditions, limitations, or exclusions may also exclude or limit coverage for the FDIC Claim.  Security National continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the Policies in relation to this matter, and reserves the right to raise such additional defenses if appropriate, whether in this action or any future action.

DEASEY, MAHONEY & VALENTINI, LTD.
SUITE 3400  ·  1601 MARKET STREET  ·  PHILADELPHIA, PA 19103-2301

**WHEREFORE**, Security National respectfully requests the following relief:

1. An Order declaring that Security National has no obligation, under the D&O and ERP Policies or otherwise, to pay any loss incurred by the Directors and Officers, including defense expenses, in connection with the FDIC Claim;

2. An Order awarding Security National its costs and disbursements herein; and

3. Such further relief as this Court deems just and proper.

    Respectfully submitted,

By: _____

DEASEY, MAHONEY & VALENTINI, LTD.
Francis J. Deasey, Esquire
Ward A. Rivers. Esquire
Identification Nos. 25699/89493
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400

    In Association With:

Joseph A. Nilan
Daniel A. Ellerbrock
Gregerson, Rosow, Johnson & Nilan, Ltd.
650 Third Avenue South, Suite 1600
Minneapolis, MN 55042
(612) 338-0755

*Attorneys for Security National Insurance Company*

Date: __February 13, 2015__

22