IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITY NATIONAL INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JESS AMCHIN, et al. | : | NO. 15-750 |

MEMORANDUM OPINION

AND NOW, this 7th day of April 2016, upon consideration of the motions to dismiss for lack of jurisdiction filed by Defendant Harry McElhone (Doc. No. 115), Jennifer Lee (Doc. No. 122), Russell Carlow (Doc. No. 123), Thomas Mennie (Doc. No. 124), David Margulies (Doc. No. 126), and Defendants John Hain, Sr., Kevin Gehring, Matthew Godshall, Donna McKeever, and Suzanne Weisberg (filing jointly, Doc. No. 125), Plaintiff's Responses in Opposition (Doc. Nos. 120, 127), Defendant Carlow's Reply Brief in Support of his Motion to Dismiss (Doc. No. 130), and Plaintiff's Sur-Reply Brief in Response to Defendant Carlow's Reply Brief (Doc. No. 133), it is hereby ORDERED that Defendants' motions are GRANTED.

I.    Background

This is a declaratory judgment action under 28 U.S.C. § 2201. Plaintiff, Security National Insurance Company ("Security National"), seeks a declaration that it has no duty to provide indemnity or defense expenses in connection with a claim by the Federal Deposit Insurance Company ("FDIC-R"), as receiver for Vantage Point Bank ("the Bank"), for monetary damages against former directors and officers of the Bank. The FDIC-R has now withdrawn its demand for monetary damages against eleven of the Defendants. The withdrawn Defendants, with the exception of Donna Baer, move to dismiss this action for lack of subject matter jurisdiction.

1

Plaintiff Security National avers in the complaint that in 2012, the Bank purchased a Directors and Officers insurance policy ("D&O policy") from it. On February 28, 2014, the Pennsylvania Department of Banking and Securities closed the Bank and appointed the FDIC-R as receiver for the Bank, due to alleged unsound practices and a failure to meet minimum capital requirements. Compl. ¶¶ 40–42. On November 24, 2014, the FDIC-R issued a demand letter to the Bank's directors and officers named in this complaint asserting claims "for negligence, gross negligence and breaches of fiduciary duties" and demanding payment in the amount of $9 million. Compl. ¶¶ 44–54; see Ex. C. to Compl. ("FDIC-R Original Demand Letter"). Plaintiff filed an action in this Court on February 13, 2015, seeking a declaratory judgment that none of the directors and officers are entitled to coverage under the policy for the FDIC-R demand. See Compl.

On May 18, 2015, the FDIC-R filed a motion to intervene in this action, which this Court granted on August 26, 2015. See Doc. Nos. 45, 88. The FDIC-R and the Bank's directors and officers filed answers to Plaintiff's complaint, and a Rule 16 conference was scheduled for November 17, 2015. See Doc. No. 110. On November 9, 2015, the FDIC-R sent a letter to every party in this action following up on its November 24, 2014 letter. See Ex. B to Def. McElhone's Mot. Dismiss, Doc. No. 115 ("FDIC-R Letter").[1] The FDIC-R stated that:

> Based on the currently available information, the FDIC-R amends its claim and withdraws its demand for monetary damages as to the following individuals:
>
> Donna Baer
> Russell Carlow
> Kevin Gehring
> Matthew Godshall
> John Hain
> Jennifer Lee/Weil

---

[1] Walter Tillman has not entered an appearance or responded to the complaint in this matter. He does not appear to have been served a copy of the FDIC-R Letter.

>David Margulies
>Harry McElhone
>Donna McKeever
>Thomas Mennie
>Suzanne Weisberg
>
>This letter is not intended to affect any claims that may exist against these individuals (e.g., enforcement, commercial, criminal) other than professional liability claims. Further, nothing in this letter is intended to impact the FDIC-R's claims against other recipients of the November 24, 2014 letter. The FDIC-R reserves all its rights including the right to amend and supplement its claim at a future time as facts or circumstances develop.

Id. In response to the FDIC-R Letter, the parties requested a continuance of the Rule 16 conference, which the Court granted. Doc. Nos. 113, 114. On November 19, 2015, Defendant Harry McElhone filed a motion to dismiss for lack of subject matter jurisdiction. Doc. No. 115. Security National filed a response in opposition on December 3, 2015. Doc. No. 120. On December 14, 2015, the Court requested that the parties listed in the FDIC-R letter file any response or motion regarding the FDIC-R's decision to amend its claim. Doc. No. 121. All of the listed parties, with the exception of Donna Baer, filed motions to dismiss the action arguing that the FDIC-R's decision rendered this case moot. See Doc. Nos. 122-126. Security National filed a combined brief in opposition, arguing that the case is not moot and that the voluntary cessation exception to the mootness doctrine applies in this matter. Doc. No. 127. Defendant Carlow also filed a reply brief in support of his motion to dismiss, and Security National replied in opposition. Doc. Nos. 130, 133. Defendants' motions to dismiss are now ripe for this Court's review.

II.     Legal Standards

    A.     Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) implicates the court's "very power to hear the case." Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir.

2006) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). A party may move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and a court *must* dismiss an action if, at any time, it determines that it lacks subject matter jurisdiction over the action, see Fed. R. Civ. P. 12(h).

In assessing a 12(b)(1) motion, the Court must first determine whether it is a factual or a facial attack on the sufficiency of the complaint. United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). While a factual attack asserts "the actual failure of [a plaintiff's] claims to comport with the jurisdictional prerequisites," a facial attack concerns a pleading deficiency. Id. In a factual attack, "it is permissible for a court to review evidence outside the pleadings." Id. (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." Atkinson, 473 F.3d at 514 (citing Mortensen, 549 F.2d at 891).

At issue here is whether the FDIC-R's withdrawal of monetary damages claims against eleven Defendants renders the case moot as to those parties and Plaintiff Security National. This issue arose after the filing of the complaint, and does not appear in the pleadings. It also calls into question whether an "actual controversy," as required by Article III of the Constitution and the terms of the Federal Declaratory Judgment Act, remains. See Steffel v. Thompson, 415 U.S. 452, 458 (1974). Therefore, the Court will review the Defendants' motions as factual attacks on our jurisdiction, and as such, we "may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true." CNA v. United States, 535 F.3d 132, 140 (3d Cir. 2008), as amended (Sept. 29, 2008).

B.     Mootness Doctrine

4

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," prohibiting the issuance of advisory opinions. That limitation is mirrored in the Declaratory Judgment Act, under which a court may grant relief only when there is a "case of actual controversy" between the parties. 28 U.S.C. § 2201(a). For a declaratory judgment action to be justiciable, "an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages of the litigation.'" Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726 (2013) (quoting Alvarez v. Smith, 558 U.S. 87, 92 (2009)). A case is moot, *i.e.* no longer a case or controversy, when: (1) the issues presented are no longer "live" or (2) the parties lack a cognizable interest in the outcome. New Jersey Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985) (quoting United States Parole Commission v. Geraghty, 445 U.S. 388, 396 (1980)). Critical in this determination is "whether granting a *present* determination of the issues offered will have some effect in the real world." Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1109-10 (10th Cir. 2010) (quoting Wyoming v. U.S. Dep't of Agric., 414 F.3d 1207, 1212 (10th Cir. 2005) (emphasis in original)). While the parties may continue to dispute the lawfulness of the action that gave rise to the lawsuit, the case is moot if "that dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." Alvarez v. Smith, 558 U.S. at 93.

However, courts have recognized multiple exceptions to the mootness doctrine, including the voluntary cessation doctrine. This doctrine provides that, as a general rule, a defendant's voluntary cessation of the activity that gave rise to the lawsuit does not render the case moot. See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982); Cty. of Los Angeles, 440 U.S. at 631; DeFunis v. Odegaard, 416 U.S. 312, 318 (1974) (citing cases). Voluntary cessation will only moot a case if "there is no reasonable expectation that the wrong will be repeated."

United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953). The defendant bears the heavy burden of making this showing. See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 190 (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.").

The voluntary cessation exception can be "trace[d] to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001); see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 66-67 (1987) ("Mootness doctrine ... protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'") (citation omitted). "This is to avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 54-55 (1st Cir. 2013). As the Supreme Court has stated, maneuvers that purportedly moot a case "must be viewed with a critical eye," and therefore voluntary cessation "does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." Knox v. Serv. Emps. Int'l Union, Local 1000, 132 S. Ct. 2277, 2287 (2012). Given this purpose, courts have found that the "[t]he voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation." Am. Civil Liberties Union of Mass., 705 F.3d at 55 (quoting M. Redish, Moore's Fed. Practice, § 101.99[2]); see Jordan v. Sosa, 654 F.3d 1012, 1037 (10th Cir. 2011); Sze v.

INS, 153 F.3d 1005, 1008–09 (9th Cir. 1998); Leonard v. U.S. Dep't of Def., 598 F. App'x 9, 10 (D.C. Cir.) cert. denied sub nom. Leonard v. Dep't of Def., 136 S. Ct. 261 (2015).

III.     Analysis

This basis for this suit arose when the FDIC-R, as receiver for Vantage Point Bank, asserted claims against the former officers and directors of the Bank. Those officers and directors sought coverage for these claims from Security National pursuant to their insurance policy. Security National brought this action to obtain a declaratory judgment that the officers and directors were not entitled to coverage for the FDIC-R claim. The FDIC-R subsequently amended its demand and removed claims for monetary damages against eleven of the Defendants in this action. The affected parties now have no reason to seek insurance coverage from Security National.

The Court will first determine whether the voluntary cessation exception to the mootness doctrine applies on these facts.[2] Because we find that the exception does not apply, the Court will then consider whether the FDIC-R's withdrawal of claims against eleven of the Defendants renders the Plaintiff's case against them moot. We ultimately determine that the case is moot, and dismiss the case against the eleven withdrawn Defendants for lack of subject matter jurisdiction.

    A.     Voluntary Cessation

The voluntary cessation doctrine is a limited exception to mootness that is not implicated here. Plaintiff argues, and the Court agrees, that this action presented an actual case or

---

[2] No other exception to mootness is relevant on these facts. For example, the other main exception to mootness, the capable-of-repetition-yet-evading-review doctrine, is inapplicable here. See Spencer v. Kemna, 523 U.S. 1, 17 (1998) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again" (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 481 (1990)) (internal citations and quotation marks omitted) (brackets in original).

controversy when it was filed, thus the only applicable doctrine to assess its justiciability is "mootness." Pl. Combined Br. Opp. Mot. Dismiss 6, Doc. No. 127. According to Plaintiff, mootness doctrine dictates that jurisdiction cannot be destroyed by the voluntary cessation or the temporary withdrawal of the conduct or threat in dispute. Id. However, the voluntary cessation doctrine is not applied in situations where it factually does not fit. For example, in American Bar Association v. F.T.C., the court focused on the "voluntary" aspect of the exception to find that it did not apply. 636 F.3d 641 (D.C. Cir. 2011). In that case, the American Bar Association ("ABA") filed a declaratory judgment action challenging a Federal Trade Commission ("FTC") policy, which, while the case was on appeal, was vitiated by an act of Congress. Id. at 643-44. The court held that the intervening law had altered the posture of the case such that there was no longer a live case or controversy. Id. at 645-47. In doing so, the court ruled that the voluntary cessation doctrine did not apply because the FTC did not voluntarily abandon or alter its position to avoid litigation. Id. at 648. Instead, intervening events simply nullified the FTC's position. Id. at 648. Here, instead of an act of Congress, it was the FDIC-R's changed position that altered the relationship between the eleven Defendants and Security National. Therefore, because the FDIC-R, not the eleven affected Defendants, has withdrawn the underlying claim, there is no *voluntary* action by the withdrawn Defendants to implicate the *voluntary* cessation doctrine. See also Rendell v. Rumsfeld, 484 F.3d 236, 243 (3d Cir. 2007) (finding voluntary cessation doctrine inapplicable when defendant did not voluntarily cease anything).

Furthermore, there is no showing that the applicable "cessation" here was done for reasons related to manipulating this litigation. A paradigmatic voluntary cessation case involves a defendant with an incentive to stop his wrongdoing long enough to avoid an expensive and unwanted lawsuit. See, e.g., Delaware Audubon Soc., Inc. v. Sec'y of U.S. Dep't of Interior, 612

8

F. Supp. 2d 442, 448 (D. Del. 2009) (finding that voluntary cessation doctrine applied where defendants' decision to voluntarily cease challenged conduct was "motivated by 'purely practical' reasons, i.e., an attempt to avoid litigation"). Here, the FDIC-R has no such incentive. Plaintiff suggests that dismissal would allow the FDIC-R to "try the issue of coverage over and over again, with respect to the [withdrawn Defendants], and choose from a variety of jurisdictions to present its case." Pl. Br. Opp. Def. McElhone's Mot. Dismiss 11, Doc. No. 120. However, the FDIC-R would have little to gain from such an approach as this litigation will move forward regardless of whether these Defendants are dismissed, and a decision regarding the terms of the contract may have preclusive effects in future litigation. See Def. Carlow Mot. Dismiss 6, Doc. No. 123. Furthermore, the Plaintiff has no facts to support this allegation, and the Court presumes that the FDIC-R's action is in good faith.[3] See Bridge v. U.S. Parole Comm'n, 981 F.2d 97, 106 (3d Cir. 1992) ("Government officials are presumed to act in good faith."); Marcavage v. Nat'l Park Serv., 666 F.3d 856, 861-62 (3d Cir. 2012) (finding case moot where the presumption that government officials act in good faith, in combination with the government's changed position, made it unreasonable to expect challenged government conduct would recur). In sum, the FDIC-R's decision does not serve the kind of manipulative purpose that implicates the voluntary cessation doctrine.

For these reasons, the Court finds that the voluntary cessation doctrine and its heightened burden do not apply here.[4]

---

[3] Plaintiff argues the FDIC-R Letter's language supports their understanding. The Court disagrees. See discussion infra p. 12.
[4] The Third Circuit has also not applied the voluntary cessation doctrine in a situation like the instant case where the actions of a third party effectively mooted the dispute between defendants and plaintiffs. See Korvettes, Inc. v. Brous, 617 F.2d 1021 (3d Cir. 1980). In Korvettes, a company and its parent brought a declaratory judgment action against the company's former CEO arising out of a contractual dispute. One part of the dispute related to a claim for compensation due to an amendment made to the CEO's employment contract. Id. at 1073. After the case was filed, the former owner of the company's stock, who was not a party to the litigation, wrote a letter to the defendant CEO
(continued…)

B.  Mootness

As the voluntary cessation exception is inapplicable, the case will be moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Los Angeles Cty. v. Davis, 440 U.S. 625, 631 (1979). In making this determination, courts consider whether granting a *present* determination of the issues will have some effect in the real world, and whether plaintiff's legal rights are still in controversy. See Rio Grande, 601 F.3d at 1109-10; Alvarez v. Smith, 558 U.S. at 93. While the likelihood a dispute will reemerge is a relevant consideration, see Korvettes, Inc. v. Brous, 617 F.2d 1024 (3d Cir. 1980) (finding case moot where "nothing in the record" indicated the dispute would once again arise), "a case . . . cease[s] to be a live controversy if the possibility of recurrence of the challenged conduct is only a 'speculative contingency,'" Burbank v. Twomey, 520 F.2d 744, 747-48 (7th Cir. 1975).

This dispute is no longer live. The justiciability of a declaratory judgment action in the insurance context hinges on whether a defendant is actually seeking to obtain coverage under the plaintiff's policy. See e.g., Sec. Nat. Ins. Co. v. F.D.I.C., No. CIV.A. 13-6736, 2015 WL 1973346, at *3 (E.D. Pa. May 1, 2015) ("In the absence of an affirmative request for coverage from Defendant, Plaintiff does not have any responsibility to provide coverage for the [underlying] action. This case and controversy is entirely dependent upon Defendant seeking to obtain coverage under the Policy.")[5]; State Farm Mut. Auto. Ins. Co. v. Ormston, 550 F. Supp.

---

(…continued)
offering to satisfy any additional obligations related to the contested contractual amendment. Id. at 1023. The defendant CEO then moved to dismiss the claim, as he was no longer pressing any demands thereunder due to the representations in the letter. Id. The Court found that the contractual claim was rendered moot, as there was no longer any disagreement between the defendant CEO and the plaintiffs over that particular claim. Id. at 1024. The court did not apply the voluntary cessation doctrine, but instead looked to whether it was likely that the contractual demand would be renewed. Id. The court found the fact that "nothing in the record" suggested the offer in the letter would be refuted, and thus there was longer an actual controversy between the parties on that claim. Id.

[5] At the center of the parties' briefing on mootness is the relevance of Security National Insurance Co. v. F.D.I.C., which Defendants use to argue that the withdrawal of a claim for insurance coverage renders an action moot, see, e.g., Def. Mennie Br. Supp. Mot. Dismiss 3-4, Doc. No. 124, and which Plaintiff distinguishes on the facts, Pl.

(continued…)

103, 106 (E.D. Pa. 1982) (finding that absent the operation of the voluntary cessation doctrine, the withdrawal of a claim for insurance suffices to make an action moot); Unigard Ins. Co. v. Cont'l Warehouse, No. C-00-4279 WHO, 2001 WL 432396, at *3 (N.D. Cal. 2001) (finding that a case was no longer live, *i.e.* moot, when "there [was] no active dispute at all, only the possibility of a dispute that may never occur."). Here, the withdrawn Defendants cannot seek coverage for a non-existent claim against them, leaving Security National without a concrete controversy for this Court to resolve. Thus, on its face, this case is moot.

     Furthermore, the facts of the case indicate that the dispute between the withdrawn Defendants and Security National is unlikely to reemerge. Plaintiff argues that the FDIC-R's withdrawal is "entirely temporary and indefinite in nature," and emphasizes the fact that the letter does not provide a release for liability or waiver of future claims. Pl. Combined Br. Opp. Mot. Dismiss 12. The Court disagrees with the Plaintiff's characterization. When the FDIC-R originally entered this litigation, it stated that it was in the process of investigating the bank and that it had "not determined whether to file litigation against the 23 individual former officers or directors, or which individuals to sue." FDIC-R Mem. Supp. Mot. Intervene 2, Doc. No. 45-2. A rationale for allowing the FDIC-R to intervene was that it would be "able to give a more accurate and complete description of the FDIC-R's claims than any of the current parties." Id. at 3. The

---

(…continued)
Combined Br. Opp. Mot. Dismiss 14, Doc. No. 127. Security National involved many of the same parties as the instant matter and arose after Vantage Point Bank requested coverage from Security National for a lawsuit filed against the Bank. 2015 WL 1973346, at *1. In that case, Security National filed a declaratory judgment action that it did not owe defense and indemnity for the litigation. Id. The FDIC became receiver for the Bank after the litigation commenced, and in that capacity, "affirmatively and unequivocally" withdrew its claims for coverage from Security National. Id. The court determined the case was moot in the first instance because it found that the existence of a case and controversy was entirely dependent on the defendant seeking to obtain coverage under the insurance policy. See id. at *3. The court then applied the voluntary cessation doctrine, and relied on defendant's affirmative and unequivocal withdrawal of its claim to find that the high burden of demonstrating mootness was met. Id. at *4-5. However, here, unlike Security National, the voluntary cessation exception is not relevant and thus an unequivocal withdrawal is not required to find the case moot. That said, the Security National court's determination on whether a case or controversy exists absent a request for insurance coverage is still relevant and persuasive in this matter.

FDIC-R Letter withdrawing claims against the eleven Defendants came nearly a year into this investigation. If the Court accepted Plaintiff's position, the FDIC-R Letter would be essentially meaningless. Instead, the situation appears akin to what Defendant Carlow argues, that "[a]fter a year of investigation the FDIC-R's decision to release [Defendants] was made, not as legal maneuver to avoid an adverse decision, but to properly exclude from the litigation those individuals who were not legally and factually liable and who should never have been included." Def. Carlow Mot. Dismiss 7, Doc. No. 123. While the Plaintiff argues that FDIC-R's reservation of its right to restate its demands is "strongly indicative of [its] belief that a future reassertion of its claim is reasonable likely to occur," Pl. Br. Opp. Def. McElhone's Mot. Dismiss 9, Doc. No. 120, the language included in the FDIC-R's letter is better characterized as a "customary non-waiver clause" rather than a true indication that the FDIC-R is planning on bringing these claims again at a later date, see Def. McElhone's Br. Supp. Mot. Dismiss 3, Doc. No. 115-1.

Moreover, the actions of the withdrawn Defendants do not indicate that there is a live dispute between the parties. Plaintiff contends that the withdrawn Defendants have not taken any recent action to eliminate the dispute, have not withdrawn their prior demands for coverage or waived the right to reimbursement for defense expenses they have incurred to date, and have made no promise to refrain from seeking coverage in the future or reasserting their counterclaims. Pl. Combined Br. Opp. Mot. Dismiss 9. While the Court does not dispute Plaintiff's factual contentions, that the withdrawn Defendants have not taken definitive action is understandable in this context, and not a stand-alone reason to retain jurisdiction over this litigation. The Defendants are responding to the actions of the FDIC-R, which has stated that it is not bringing monetary damages claims against them, but that it reserves the right to alter that position as "facts and circumstances develop." Should that unlikely contingency arise, the

withdrawn Defendants understandably do not want to foreclose the possibility of requesting insurance coverage. However, all that exists at this point are speculative possibilities, which are not sufficient to make a controversy live. See Burbank, 520 F.2d at 747-48. Furthermore, the fact that the withdrawn Defendants are seeking to be dismissed from the litigation indicates they have no current dispute with Security National.

In sum, the FDIC-R's Letter ended any active controversy between Security National and the withdrawn Defendants. The mere possibility the claim will be reasserted is not sufficient to make this case live, see Burbank, 520 F.2d at 747, and because there is no current claim for coverage, granting a present determination of the issues would not resolve any case of actual controversy between the parties, as required by the Declaratory Judgment Act. See Rio Grande, 601 F.3d at 1109-10 (10th Cir. 2010). Therefore, the Plaintiff's action against the withdrawn Defendants is moot.[6]

---

[6] Even if the Court had reached a different determination on mootness, we would still decline to allow the action to go forward against the withdrawn Defendants. A declaratory judgment is a remedy committed to judicial discretion. A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 331 (1961); Safeco Ins. Co. of Am. v. Constitution State Ins. Co., 881 F.2d 1084 (9th Cir. 1989). It is an equitable remedy, and courts may decline to issue a declaration even if the case presents an Article III controversy. See, e.g., Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 (1993); see 28 U.S.C. 2201(a) (a court "*may* declare the rights and other legal relations of any interested parties") (emphasis added). "This is an exception to the general rule that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" Reifer v. Westport Ins. Corp., 751 F.3d 129, 134 (3d Cir. 2014) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). In the Third Circuit, district courts must consider four general factors when determining whether to exercise declaratory judgment discretion: "(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." Reifer, 751 F.3d at 140. District courts may also give consideration to the following additional factors where they are relevant: "(5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion." Id. at 146. Here, the Court finds that factors militate in favor of declining jurisdiction. While many of the factors are neutral, or may weigh in favor of adjudication, such as the avoidance of duplicative litigation, the Court finds that the lack of a live demand for insurance coverage weighs substantially against declaratory relief. Here, the withdrawn Defendants would be forced to expend time, labor, and money defending their right to be covered for a non-existing claim against them, which strikes the Court as inconvenient and unwarranted. Furthermore, the Court's decision here does not deprive Security National of any future judicial relief against the withdrawn Defendants. Thus, the

(continued…)

IV.     Conclusion

For all the foregoing reasons, it is hereby ORDERED that Defendants' motions to dismiss (Doc. Nos. 115, 122, 123, 124, 125, 126) are GRANTED. It is further ORDERED that Donna Baer,[7] Russell Carlow, Kevin Gehring, Matthew Godshall, John Hain, Jennifer Lee/Weil, David Margulies, Harry McElhone, Donna McKeever, Thomas Mennie, and Suzanne Weisberg are DISMISSED from this action.

BY THE COURT

/s/ Legrome D. Davis

Legrome D. Davis, J.

---

(…continued)
circumstances of this case counsel against allowing the litigation to move forward against these Defendants at this time.

[7] While Defendant Donna Baer did not file a motion to dismiss, because the Court finds that it lacks subject matter jurisdiction over Plaintiff Security National's claims against the withdrawn Defendants, Ms. Baer must also be dismissed.